## AFFIDAVIT OF SPECIAL AGENT JAMIE P. VITALE
### (FILED UNDER SEAL)

I, Jamie P. Vitale, being duly sworn, do hereby depose and state under oath as follows:

### Introduction

1. I am a police officer with the Massachusetts State Police and have been so employed for approximately 10 years. I have attended and graduated from the Massachusetts State Police Academy.

2. From July of 1998 through November of 2003, I was assigned to the Massachusetts State Police Special Tactical Operations Team. I have been assigned to the Drug Enforcement Administration High Intensity Drug Trafficking Area Task Force as a Deputized Task Force Agent since April 2003.

3. During my career, I have been involved in many narcotic-related arrests and in the execution of numerous narcotic-related search warrants. I have seized and examined narcotics including cocaine, crack cocaine, heroin, tar heroin, marijuana, hashish, ecstasy, LSD and various prescription narcotics. I have been trained in and conducted basic field-testing of illegal narcotics. I have conducted physical and electronic surveillance of drug distributors. I have debriefed and worked with confidential informants and cooperating witnesses who have been involved in the use and distribution of controlled substances. I have conducted or participated in the introduction of undercover agents, undercover transactions and the reviews of taped conversation and drug records. I have acted in an undercover capacity and purchased various amounts of cocaine, crack cocaine and heroin.

4. Through my education, training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed; the practices and procedures commonly employed by narcotics traffickers to conduct their business, including the use of telephones, cellular phones, and pagers; the method of payment for such drugs; and some of the methods that are used to disguise the source and nature of the profits made by narcotics traffickers.

5. Specifically, I am familiar with the manner in which narcotics traffickers use

1

vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I also am familiar with the manner in which narcotics traffickers use telephones, coded or slang-filled telephone conversations, pagers, coded pager messages, and other means to facilitate their illegal activities. I am also familiar with the ways in which many drug traffickers stash drug proceeds and narcotics and items related to the packaging and distribution of narcotics.

### This Case

6. I have personally participated in the investigation of the individuals discussed below since in or about December 2003. I am familiar with the facts and circumstances of this investigation from oral and written reports made to me by other agents of the DEA, other federal, state and local law enforcement agencies, oral and written reports of conversations and meetings with numerous confidential sources, a review of consensually recorded conversations, and a review of conversations intercepted pursuant to court-ordered wiretaps as well as my own personal participation in the investigation which includes surveillance and independent investigation.

7. I submit this affidavit in support of an application for a criminal complaint regarding **MARIA REYNALDA LARIOS TRUJILLO a/k/a "Reina" ("LARIOS")** charging her with possession with intent to distribute and distribution of 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance (and aiding and abetting same), in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. §2.

8. This affidavit includes a summary of events that I am personally familiar with as well as information related to me by other law enforcement personnel who have been working on this investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish the requisite foundation for issuance of a criminal complaint for **LARIOS.**

## Overview of Investigation

9.     Evidence gathered to date in this investigation reveals that the individuals discussed below (whose names are identified in capital letters and who, collectively, are referred to as the "Target Subjects") and others are involved in a conspiracy to possess with intent to distribute and to distribute marijuana and cocaine. This investigation has involved information from several sources including but not limited to telephone calls intercepted pursuant to wiretaps authorized by this Court (Gorton, J.) on 347-235-1998, International Mobile Subscriber Identity ("IMSI") number 316010101338154 and urban fleet mobile identifier ("UMFI")[1] Number 183*133*9951, which is a Nextel Communications cellular telephone subscribed to Jose Terrarez, 3670 Barnes Avenue, Bronx, New York used by Target Subject GILBERTO MORFIN-RODRIGUEZ, a/k/a "GIL" ("GILBERTO") (hereinafter "Target Telephone 1"), 347-235-1996, IMSI number 316010101338135 and UMFI Number 183*133*9932, which is a Nextel Communications cellular telephone subscribed to Jose Terrarez, 3670 Barnes Avenue, Bronx, New York used by Target Subject RIGOBERTO MORFIN-RODRIGUEZ, a/k/a "RIGO" ("RIGOBERTO") (hereinafter "Target Telephone 2"), cellular telephone currently assigned telephone number 310-270-1179, IMSI number 316010100292802 and UMFI number 126*962*1770, which is a Nextel Communications cellular telephone subscribed to Phil Jacks, 401 W. A Street, San Diego, California used by GILBERTO (hereinafter "Target Telephone 3") and the cellular telephone currently assigned telephone number 978-788-3025, IMSI number 316010102250544 and UMFI Number 183*914*50, which is a Nextel Communications cellular telephone subscribed to Donny Do, 379 Main Street, Fitchburg, Massachusetts used by GILBERTO ("Target Telephone 4") (collectively, "the Target Telephones"), physical surveillance, the results of searches conducted at various locations associated with certain of the Target Subjects on March 13, 2005 and review of subscriber information, pen register data

---

[1] The Target Telephones have a removable computer chip that is encoded with an IMSI number. The chip may be inserted into similarly equipped telephones and used to operate those phones. The IMSI number is unique to a subscriber. In addition, the UFMI number allows Nextel telephones to contact other Nextel users directly via the "direct connect" feature.

3

and toll records relating to phones used by the aforementioned individuals and/or their associates. The interception of Target Telephone 1 occurred between October 29, 2004 and November 9, 2004, when GILBERTO stopped using Target Telephone 1. Interception of Target Telephones 2 and 3 began on December 2, 2004. Interception of Target Telephone 3 ended on February 10, 2005 when GILBERTO stopped using Target Telephone 3. Interception of Target Telephone 4 began on February 18, 2005. Interception of Target Telephones 2 and 4 terminated on March 13, 2005 in connection with the arrests of the aforementioned Target Subjects.

### Background on MARIA REYNALDA LARIOS a/k/a "REINA"

10.    **LARIOS** is a 43 year-old Mexican female who resides primarily in Wisconsin. As described in more detail below, interceptions over Target Telephone 3 and physical surveillance have identified LARIOS as an associate of the MORFIN DTO who delivered a kilogram of cocaine to the MORFIN DTO on February 2, 2005 that GILBERTO subsequently rejected and had returned to her because of the drug's poor quality. Subsequently, upon execution of a federal warrant, law enforcement agents seized approximately 3 kilograms of cocaine from 26 Linden Street, Rear Second Floor Apartment, Fitchburg, Massachusetts ("26 Linden Street residence") where **LARIOS** was staying at the time.[2] In 2000, **LARIOS** was charged and found guilty in Cleveland, Ohio for violation of the state controlled substance act and possession of cocaine.

### Probable Cause

### Background on Morfin DTO

11. RIGOBERTO is the leader of a violent drug trafficking organization based primarily in northern Worcester County that distributes large quantities of marijuana and cocaine to customers throughout New England ("MORFIN DTO"). GILBERTO is the nephew and close

---

[2] A review of Registry of Deeds records revealed that Ricardo Larios, **LARIOS**' brother, owns the 26 Linden Street residence. A review of a law enforcement database that includes information from various public records indicates that the second floor apartment at the 26 Linden Street residence is listed in the name of Elena Larios, the mother of **LARIOS**. (I also understand that another DEA Task Force Agent interviewed Elena Larios at this residence in or about May 2004 in connection with an unrelated investigation).

associate of RIGOBERTO. GILBERTO is believed to act as the second-in-command to RIGOBERTO for the MORFIN DTO. During the interception of the Target Telephones (and related surveillance and investigation), RIGOBERTO, GILBERTO and other members of the MORFIN DTO (including but not limited to JOSE CARDENAS ("JOSE") and TEODORO CARDENAS ("TEODORO") who distributed drugs and otherwise assisted in drug trafficking for the MORFIN DTO) have been engaged in the acquisition, transport and distribution of large quantities of narcotics.

12. For example, intercepted calls (and related surveillance) involving RIGOBERTO and other members of the MORFIN DTO indicated that they were involved in arranging the transport of approximately 355 pounds of marijuana from Arizona to Massachusetts that was seized by law enforcement officers in Nevada from a vehicle driven by JOSE VICTORIA, JR. on November 6, 2004. For another example, RIGOBERTO, JUAN M. VARGAS and other members of the MORFIN DTO were involved in (and intercepted in discussions about) arranging the transport, in a vehicle driven by Yesenia Rodriguez Sahagun, of approximately $209,000 from Massachusetts to Arizona that was seized by law enforcement in New York on December 30, 2004. Also based upon intercepted calls, the investigation has revealed that this large quantity of cash was intended as payment for a load of marijuana.

13. For a third example, in the days leading up to March 2, 2005, there were intercepted calls between GILBERTO and JUAN ARTEAGA (and related surveillance at 82 Ashburnham State Road, JUAN ARTEAGA's residence) indicating that the MORFIN DTO was arranging for the purchase and transport of a shipment of drugs to Massachusetts. On the morning of March 2, 2005, surveillance agents observed a white Kenworth Tractor, WA Reg 93630PR pulling a Thermo King Trailer #419, arrive at and pull into the driveway at 82 Ashburnham State Road. Agents then observed three males unhooking the tractor from the trailer unit. The tractor unit was then moved away from the trailer. Later that day, a white van, Massachusetts registration 27VR50 (registered to Peter Lobo, 1221 Reed Rd., North Dartmouth, Massachusetts), that had

arrived at the 82 Ashburnham State Road location the previous day, departed the residence and surveillance agents followed it. A Massachusetts State Police trooper subsequently conducted a stop of the van for a routine traffic violation. A check of the Massachusetts registry files revealed the operator of the vehicle to be unlicenced. The operator, Juan Reyes Villa Gomez, was subsequently arrested for operating without a license. During inventory, approximately fourteen bundles of marijuana were located inside the rear of the van. The operator, the vehicle and evidence were subsequently transported to the State Police Barracks in Grafton, secured and processed. The marijuana was determined to be approximately 467 pounds. During the early morning hours of March 3, 2005, a search warrant was executed on the 82 Ashburnham State Road residence. During this search, approximately 531 pounds of marijuana, one 45-caliber, semi-automatic handgun, one 38-caliber revolver and ammunition were seized. Law enforcement officers arrested JUAN ARTEAGA and MIGUEL ARTEAGA and three other individuals who were in the residence at the time that search warrant was executed.

14. On March 12, 2005, this Court issued a criminal complaint against RIGOBERTO, GILBERTO, and eleven other associates of the MORFIN DTO including JUAN M. VARGAS, a/k/a "JUANITO"; JOSE NOEL VICTORIA JR., a/k/a "PEPE MONIKER," "EL GORDO"; MIGUEL ARTEAGA, a/k/a "EL CHUECO"; TEODORO CARDENAS, a/k/a "TEODORO"; JOSE GALLARDO CARDENAS, a/k/a "PEPE"; GUADALUPE JUAN RAMOS ARTEAGA; OCTAVIANO VARGAS BARAJAS, a/k/a "TAVO"; JERRY T. HUNTER a/k/a "EL NEGRO"; KERRY FELKER; JESUS MENDOZA, a/k/a "CHUY"; and GEOVANE ROJAS for conspiring to distribute cocaine and marijuana in violation of 18 U.S.C. §§846, 841(a)(1) and authorized search warrants for searches of various residences associated with the MORFIN DTO. The results of these searches (conducted on March 13, 2005) yielded approximately 800 pounds of marijuana, approximately $200,000 in cash and several firearms. The thirteen individuals charged in this matter remain in custody.

## GILBERTO Negotiates Purchase of Cocaine From REINA

15. In or about January and February 2005, **LARIOS** was intercepted via Target Telephone 3 in conversation with GILBERTO discussing cocaine.[3] On January 20, 2005, GILBERTO placed an outgoing call to 732-948-4997, a telephone number subscribed in the name of Salvador Escobedo-Tabares, 810 South 29th Street, Milwaukee, Wisconsin, and spoke with **LARIOS**. GILBERTO asked **LARIOS** what she was up to. **LARIOS** told GILBERTO that she told "Gordito" that here in Chicago some "girls" had arrived, so the guy (meaning a 3rd party) had asked LARIOS if she could take the "girls" over there and put them to work. **LARIOS** stated that she was going to leave it like that yesterday and the old man noticed that the car didn't have anything, and then she asked GILBERTO if he knew what she meant by that. GILBERTO responded positively. **LARIOS** then responded that the old man didn't want to take any risks and he thought that **LARIOS** had the same car, and she told him that she didn't have it and he told her that she couldn't send it like that. GILBERTO then asked **LARIOS** what was the "number" at which they would offer it to him. **LARIOS** replied that she hadn't discussed her rates yet (with him) because he was different. GILBERTO then encouraged **LARIOS** to ask him because the prices over here were pretty low. **LARIOS** asked GILBERTO how low did the prices go. GILBERTO responded that they offered it to him at "twenty." **LARIOS** then went on to say that he (meaning a 3rd party) was trying to find a car so that the girls could fit comfortably. Based upon the investigation to date and my training and experience, I believe that during this conversation GILBERTO and **LARIOS**

---

[3] Intercepted conversations on the Target Telephones were in Spanish. The summaries of intercepted conversations on the Target Telephones set forth in this affidavit are based upon summaries of conversations and draft translations that have been prepared by monitors who are fluent in Spanish and English. The intercepted conversations included telephone-to-telephone as well as push-to-talk communications; I refer to both of these type of communications as calls. The calls summarized below are not all of the calls that have been intercepted, nor are the summaries verbatim accounts of each call. The summaries are based upon preliminary summaries of the calls prepared by monitoring agents and information from agents involved in this investigation. Where necessary, an interpretation of the substance of the calls based upon my training and experience and the information developed to date in this investigation is provided in parentheses or after the summary of the call(s).

were discussing the shipment of a load of cocaine to Massachusetts and that when they mentioned "girls" they were referring to cocaine. I also believe that **LARIOS** was discussing getting a car with a secret compartment in order to ship the cocaine.

16. On January 31, 2005, GILBERTO placed another outgoing call to 732-948-4997 and spoke with **LARIOS** again. GILBERTO asked **LARIOS** if they could meet now. **LARIOS** then invited GILBERTO over and told him that she would be alone at her mother's house. **LARIOS** then went on to ask GILBERTO if he knew how to get to her mother's location, the same place where he went last time. GILBERTO responded positively. GILBERTO told **LARIOS** that he was going to stop at **LARIOS'** location in the next five minutes. Although later investigation revealed that the "mother's house" that **LARIOS** referred to in this call was the 26 Linden Street residence, The other agents and I did not know this at the time of this interception and, therefore, there was no surveillance of GILBERTO meeting with **LARIOS** at this time.

17.　　Based upon the aforementioned intercepted calls and my training and experience, I believe that on January 31, 2005, GILBERTO went to the 26 Linden Street residence to meet **LARIOS** and viewed the cocaine.

18. On February 2, 2005, GILBERTO again placed an outgoing call to 732-948-4997 and left a message on voicemail asking **LARIOS** to call him back because he needed to talk to her. Later that day, GILBERTO received an incoming call from 732-948-4997 and spoke with **LARIOS**. GILBERTO asked **LARIOS** what did she do with the "family." **LARIOS** said that she had one left. GILBERTO asked her which one is left and whether it was the ugliest one. **LARIOS** replied that he was the ugliest one only because she got rid of the one that GILBERTO claimed to be the ugliest one. **LARIOS** then asked GILBERTO if he needed it and GILBERTO asked if she could give it to him at twenty. **LARIOS** then asked what time to which GILBERTO replied, in the next twenty minutes. **LARIOS** then said that she was going to call him in ten minutes. GILBERTO then asked her if the one she had there was the one that GILBERTO opened first or which one it was. **LARIOS** then asked if he remembered that there were two of the same quality. GILBERTO said that they

were not the same. **LARIOS** then said that it would be best for him to check it out then. GILBERTO told **LARIOS** to call him right away, because the guy ("Ramiro") was waiting on him. **LARIOS** then promised to call GILBERTO soon. When **LARIOS** and GILBERTO discussed the ugliest one, they were referring to one of the kilograms of cocaine that was not of good quality. I also believe that when GILBERTO asked **LARIOS** for it at twenty, he was requesting that **LARIOS** sell him a kilogram of cocaine at $20,000 which is consistent with the going rate for a kilogram of cocaine in Massachusetts.

19. Soon thereafter, GILBERTO placed another call to 732-948-4997 and spoke again with **LARIOS**. GILBERTO asked **LARIOS** to hurry up because he (Ramiro) was calling him. **LARIOS** asked GILBERTO where he (GILBERTO) wanted it delivered to and GILBERTO asked if the "compadre" (referring to TEODORO) could go pick it up himself. **LARIOS** asked GILBERTO who his compadre was and GILBERTO responded that he was the same person who had come with him the other day. **LARIOS** agreed. GILBERTO asked if he (meaning TEODORO) could go there and pick it up and **LARIOS** said yes. GILBERTO said that he (meaning TEODORO) was heading over momentarily.

20. Surveillance was set up at the 26 Linden Street residence. At approximately 1:00 p.m., agents observed TEODORO and JOSE, in a vehicle registered to JOSE, traveling from the area of 62 Frankfort Street, Fitchburg, Massachusetts. Agents observed the vehicle travel to the 26 Linden Street residence and park in front of this location. Agents observed TEODORO exit the vehicle and walk to the rear of the residence. At approximately 1:06 p.m., agents observed TEODORO and JOSE traveling away from the 26 Linden Street residence in the same vehicle. Agents observed as the vehicle traveled from the 26 Linden Street residence directly to RA Multi Services, 149 Clarendon Street, Fitchburg, Massachusetts and park. Agents observed the occupants enter RA Multi Services and exit only minutes later. Agents observed as TEODORO and JOSE returned to their vehicle and traveled back to the 26 Linden Street residence and again parked in front of the location. Minutes later, agents observed as the vehicle left the area. At that time,

approximately 1:15 p.m., agents observed a 1999 Oldsmobile Cutlas, bearing Wisconsin registration 263JBG, parked in the driveway of the 26 Linden Street residence. A check with the Wisconsin Registry of motor vehicles revealed this vehicle to be registered to Salvador Escobedo-Tabares, the listed subscriber for the telephone used by **LARIOS**. Agents observed as the Wisconsin vehicle left the area and returned a short time later.

21.    Later that day (February 2nd), GILBERTO received an incoming call on Target Telephone 3 from **LARIOS**. **LARIOS** asked GILBERTO what happened. GILBERTO said that he was still waiting for the man (meaning Ramiro, a drug customer) to call back and then GILBERTO was going to return her call. GILBERTO then went on to say that she didn't tell him that the others had arrived. **LARIOS** asked which ones and GILBERTO replied that that was what compadre had told him. **LARIOS** acknowledged what he was saying and said that it was two or three that the guy brought in and that they can discuss things further once he brings in the receipts. GILBERTO then said he might arrange another one with her later. **LARIOS** then asked when GILBERTO would be ready with that. GILBERTO stated a little while longer because that GILBERTO was going to call him and then he will call her back. Based upon the investigation to date and my training and experience, I believe that **LARIOS** and GILBERTO were discussing the payment ("the receipts") for the kilogram of cocaine that GILBERTO needed to get to LARIOS and that GILBERTO was waiting to receive it from the customer for whom GILBERTO had obtained the cocaine. In this conversation, when GILBERTO was asking **LARIOS** about her having not told him that "the others" had arrived, he was referring to the other quantities of cocaine that his "compadre" (TEODORO) had seen at the 26 Linden Street residence when he had retrieved the one kilogram of cocaine from **LARIOS** earlier that day.[4]

---

[4]After TEODORO went to the 26 Linden Street residence, he had a conversation with GILBERTO via Target Telephone 3 in which TEODORO said that he had noticed that there was something wrong with the kilogram of cocaine that **LARIOS** gave him. **LARIOS** made TEODORO get the scale to weigh the cocaine. GILBERTO then asked TEODORO if she (**LARIOS**) only had one (meaning only one kilogram of cocaine). TEODORO said she (**LARIOS**) had more (meaning more than one kilogram of cocaine) if he wanted more.

10

22. At approximately 4:04 p.m., surveillance was established at RA Multi Services. Agents observed the vehicle with TEODORO and JOSE stop at RA Multi Services and park. Agents observed TEODORO enter RA Multi Services empty handed and exit carrying a white plastic grocery bag minutes later. Agents observed TEODORO and JOSE travel directly to the 26 Linden Street residence and park in front of this location. At approximately 4:18 p.m., agents observed TEODORO exit the vehicle, walk up the rear stairs and enter the 2nd floor, rear entrance of the 26 Linden Street residence. At approximately 4:20 p.m., agents observed TEODORO exit the rear door, 2nd floor of the 26 Linden Street residence and return to the vehicle empty-handed.

23. Later that day, **LARIOS** left a message on GILBERTO's voicemail complaining that they brought it back all teared up and asked for a call back from GILBERTO. Soon thereafter, GILBERTO placed a call to 723-948-4997 and spoke with **LARIOS**. **LARIOS** complained to GILBERTO that he brought it back all messy and dug up. GILBERTO asked who did that and then **LARIOS** asked if GILBERTO saw it. GILBERTO replied that he had not. **LARIOS** went on to say that after two hours of having it they brought it back all messed up. **LARIOS** then stated that GILBERTO would not have liked it if she did that to him. GILBERTO then told **LARIOS** that she should give it to GILBERTO and that GILBERTO would take care of it. **LARIOS** told him that he should not take it if he doesn't like it. GILBERTO said that he would ask another person and will see if he can give it away somewhere else. **LARIOS** said she understood that they must look at it but they shouldn't dig all of it up. GILBERTO told **LARIOS** not to worry and that he would call her back in a bit.

24. Based upon the surveillance of TEODORO and JOSE back to the 26 Linden Street residence and the subsequently intercepted calls between GILBERTO and **LARIOS** on Target Telephone 3, I believe that after determining the quality of the cocaine was unacceptable, the cocaine distributed by **LARIOS** to the MORFIN DTO was returned to **LARIOS** at the 26 Linden Street residence.

25. On February 02, 2005, at approximately 11:35 p.m., members of the Drug Enforcement Administration, Massachusetts State Police, and Fitchburg Police Department executed a search warrant at 26 Linden Street, 2nd floor apartment, Fitchburg, MA. When the law enforcement officers entered the 26 Linden Street residence, **LARIOS** and others were there. Agents found a plastic shopping bag containing a Ritz cracker box, which appeared to contain empty packaging material and a white powdery residue on the floor next to a dresser in the 2nd floor left side bedroom. Agents also found three rolls of tape, plastic wrap and two knives on the dresser. A search of the 2nd floor left side bedroom was conducted and agents discovered two hard rectangular objects wrapped in duct tape in one audio speaker and one hard rectangular object wrapped in duct tape in the other speaker. These three items contained a white powdery substance. Samples of the conducts of these three items were field tested and tested positive for the presence of cocaine. These items were seized and contain approximately three kilograms of cocaine. A search also found a large blue trash bag in the 2nd floor hallway closet, which contained marijuana residue and empty packaging materials. Agents seized this bag, and retrieved an amount of suspected marijuana residue.[5]

26. On February 06, 2005, at approximately 1:06 p.m., GILBERTO received an incoming call on Target Telephone 3 from an unidentified Mexican number and spoke to Leonel Cervantes-Garcia. Cervantes-Garcia and GILBERTO talked about the lady (meaning **LARIOS**) who lived by Giovanni getting busted. GILBERTO said he knew and that the lady had been saying it was GILBERTO who set her up because GILBERTO had been there three hours before the bust. GILBERTO said that he was told that the lady (**LARIOS**) wanted to make things complicated so she would not have to pay down there. Based upon the investigation to date, I believe that in this conversation when Cervantes-Garcia and GILBERTO talk about the lady getting busted, they were referring to the February 2, 2005 execution of a federal search warrant at 26 Linden Street, Fitchburg,

---

[5] Although the agents seized the cocaine pursuant to the search warrant, the agents did not arrest **LARIOS** or any of the others on the scene since the interceptions of Target Telephones 2 and 4 (and the related investigation) were still ongoing at the time.

12

Massachusetts, described above. I believe that GILBERTO was telling Cervantes-Garcia that the lady (**LARIOS**) blamed him (GILBERTO) for the narcotics seized during the execution of the search warrant.

27. **LARIOS**' husband, Guadalupe Cortez, a/k/a Ramon had been previously arrested on February 23, 2004 and was charged with multiple counts including but not limited to two counts of possession with intent to distribute THC (tetrahydrocannabinol) and possession with intent to distribute cocaine. Cortez has entered a guilty plea to these three charges and is in custody at the Sheboygan County Jail in Wisconsin awaiting sentencing. Cortez is permitted to make phone calls from the county jail. These phone calls are routinely recorded by the county jail. Between January 22, 2005 and February 5, 2005, Cortez made several calls to **LARIOS** at 732-948-4997.[6] (I note that this was the same telephone number that **LARIOS** used during her intercepted telephone calls with GILBERTO via Target Telephone 3 before and during the February 2nd cocaine transaction). During three of these phone calls, the two discussed **LARIOS** making a trip to Boston and Cortez urged her not to go, but she told him that she wanted to help him pay for an attorney as well as the fact that the kids needed things. During another phone call, **LARIOS** spoke to Cortez and informed him about what happened. Although **LARIOS** told Cortez that she would tell him the whole story on Saturday when she visited, she did mention during the telephone conversation that some guys showed up and took some stuff from them. Based upon the investigation to date, I believe that **LARIOS**' reference to what had happened was to the execution of the search warrant on February 2, 2005 and that the reference to some guys showing up and taking stuff from them was to the seizure of three kilograms of cocaine by law enforcement agents at that time.

---

[6]Although I have not listened to the county jail recordings myself, I have received information about these telephone calls from DEA Task Force Officer Ricardo Tijerino from Wisconsin who has reviewed these recordings and is familiar with the voices of **LARIOS** and Cortez. DEA Task Force Officer Tijerino has also informed me that **LARIOS** has also admitted to having used the cellular telephone, 732-948-4997, that Cortez was calling on these occasions although she claimed that she could not remember the exact time span when she used it.

## Conclusion

28. Based on all the foregoing, I submit there is probable cause to believe that **MARIA REYNALDA LARIOS TRUJILLO, a/k/a "Reina"** possessed with intent to distribute and distributed 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance (and aided and abetted same) in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. §2.

**Dated this __ day of April, 2005.**

_____
JAMIE P. VITALE
**Task Force Officer
Drug Enforcement Administration**

Sworn to and subscribed to before me in Worcester, Massachusetts, this __ day of April 2005.

_____
CHARLES B. SWARTWOOD, III
**CHIEF UNITED STATES MAGISTRATE JUDGE**

₰JS 45 (5/97) - (Revised USAO MA 6/29/04)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** Fitchburg   **Category No.** I   **Investigating Agency** DEA

**City** Fitchburg   **Related Case Information:**

**County** Worcester

Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   05-1010-JGD
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Maria Reynalda Larios Trujillo   Juvenile ☐ Yes  ☒ No

Alias Name   Reina

Address   _____

Birth date (Year only): 1962  SSN (last 4 #): 2288  Sex F  Race: Hispanic  Nationality: Mexico

**Defense Counsel if known:** Unknown   **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA   Denise Casper/Cynthia Lie   Bar Number if applicable _____

Interpreter:  ☒ Yes  ☐ No   List language and/or dialect:   Spanish

Matter to be SEALED:  ☒ Yes  ☐ No

☒ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**  ☒ Complaint   ☐ Information   ☐ Indictment

**Total # of Counts:**  ☐ Petty   ☐ Misdemeanor   ☒ Felony  One

Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: April 8, 2005   Signature of AUSA: *Denise Jefferson Casper*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Maria Reynalda Larios (a/k/a "Reina")

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21/841 | Distribution of Cocaine | |
| Set 2  18/2 | Aiding and abetting distribution of cocaine | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**